We'll hear argument next in Sury Van Walker. Mr. Walker? I'm sorry. We'll hear argument in Long v. Lain. So you sit down, please. Sorry. And I think we've got the two attorneys on Zoom. Is that correct? All right. Mr. Sutherland, can you hear us? I can, Your Honor. Can you hear me? Yes. Good morning. Please proceed. Good morning, and it may please the Court. I'm Brian Sutherland for Appellant Vincent Long, and I'd like to reserve two minutes for rebuttal, please. Granted. This case was on the eve of trial when the District Court dismissed it sua sponte and entered judgment. Our request here is that the Court should reverse the judgment because the District Court failed to make any of the required findings before entering judgment, and the five Rule 41 factors also lead to reversal. This Court's published decision in Baptiste held that District Courts must weigh factors prescribed by this Court's case law, and if a District Court fails to do so, this Court can only assume that the District Court overlooked that requirement. In that situation, this Court cannot say that the District Court's decision to dismiss was a reasonable one, and in this Court and in this case, we have just a text-only order. It was not 102 pages. It was barely 102 words. It was not 15 slapdash pages. It was a dismissal and an entry of judgment by tweet without considering any of the relevant factors or making the required findings that this Court required in Baptiste. And what the dismissal is here is akin to a dismissal as a form of sanction for failure to respond to the order to show cause, and that kind of dismissal requires a finding of willfulness, bad faith, or reasonably serious fault. Can I interrupt you for a second? I mean, you want us to look only at the show cause order and just that sort of interaction and the dismissal based on that. And I guess the other side, your friend wants us to look at the entire conduct within the litigation, and I'm not sure either is right or wrong, but if you do look at the broader context, then it's not just sort of the way you're framing it. There was an overall delay that was months, if not years. There was, I think, the show cause order itself arguably was a lesser sanction and a notice that your client had to show up to prosecute the case. So why isn't that broader perspective a better way to see this? The District Court didn't say anything about the broader context, and if the Court looks at the whole record, what it will see is that the parties engaged in discovery. At page 160, both lawyers said the parties had exchanged the vast majority of the material documentation. They jointly asked for extensions at page 199, page 203, and also 205 with different lawyers representing Mr. Long. And then after he no longer had counsel, he repeatedly communicated to Mr. Fitch, counsel for the defendants, that he wanted to proceed. That's at pages 220. So obviously your client was not absent the entire time, but at some point he missed the – there was a status conference, right, that was missed that started this, and then there was the request, the order to show cause. So isn't that part of this entire – this dynamic at least, that at some point your client started not to prosecute the case and the District Court was responding to that with this order to show cause? At one point, Mr. Long did not appear for the status conference. It was scheduled for January 13. The Court issued the order to show cause. So if that's our relevant history of failure to prosecute, the duration of the plaintiff's failures were extremely short. We have a distance of four days between the deadline of February 13 for responding to the order to show cause, and then on February 17, the Court dismisses. There are no cases that say that a delay of four days is a sufficient basis to dismiss a case. My colleague on the other side has found a couple cases dealing with four months or maybe 14 months, but nothing approaching the very short duration of the failures in this case. He hasn't identified – that is to say, the defendants have not identified how that four-day delay or even a one-month delay would have prejudiced the defendants here, given that most of the discovery, if not all of it, had been completed, and the parties really just were waiting to go to trial, and all that they needed was a trial date. And what the Court said in Baptiste was that it was an error to dismiss when the defendants had not pointed to any concrete way that they have suffered or will suffer prejudice to delay. Well, the Court thought that there needed to be a status conference, and your client didn't show up for that. So I'm not sure that scheduling a trial is the prudent thing to do in that situation. Well, I think it's an abuse of discretion to dismiss. Not to schedule a trial when one of the parties is not showing up for a conference, a status conference. Correct. That's correct. A single failure to appear for a status conference does not warrant the harshest possible sanction available to the District Court, which is dismissal of the case on the eve of trial. Consider the investment of resources on all sides here. The District Court had considered this case for a period of years. The parties had conducted discovery, and now we have someone who's proceeding pro se, and the date for the status conference changes, and he misses the status conference. That's something that happens in any number of cases. I mean, the delay in Baptiste was two years. The delay in many of the other cases in which this Court has reversed Rule 41 dismissals has often been more significant than simply missing the status conference. Mr. Sutherland, what happened in the case, and what progress was made in 2021 and in 2022, if anything? In 2021, I believe that was a period of time during which Mr. Long... I mean, first of all, that's during COVID, so there was difficulty all around. I don't know if all of the delay during that period could be laid at Mr. Long's feet or at defendant's feet or at the District Court's feet. The COVID period was extremely difficult. During that period, Mr. Long is, I believe, writing messages to Mr. Fitch, saying he wanted to proceed. He's identifying people he wants to depose. He is providing a list of expert witnesses. That's at 237. I don't have the exact date on that in front of me. Also, during this period of time, he is in and out of the hospital. You'll see at page 226, he sends a letter to opposing counsel and also files a report stating that he's receiving treatment for chemotherapy. He has a hospital stay. That's at 232. So, there is strong evidence here that the parties had completed discovery or almost completed discovery. And then, during this later period of time, which is during the COVID period, there is correspondence in the record. Then, finally, the District Court, while Mr. Long is proceeding, per se, schedules the status conference. What do we do with the apparently backdated letter that was dated January 19 but postmarked in March 6? The District Court seemed troubled by that. And how do we factor that in? Two responses on that, Your Honor. First, the District Court erred in entering judgment well before that letter arrived at the District Court. And whatever the District Court may have thought of that letter could not have retroactively justified its decision to enter judgment so precipitously. It's irrelevant to the District Court's decision. That's right, Your Honor. Second, if the Court did get to the point of considering it, the record here is not sufficient to conclude that it's backdated. The explanation that we offered in our brief was that it was potentially lost in the mail and then not postmarked and found until some later point in time. And what Mr. Long said in his affidavit was that it was mailed. He uses a passive voice, so we don't quite know how he handed it off for delivery or what really happened to the mail. And in the case of Cologne v. Mack, what this Court said was that there is a sworn affidavit and a plausible explanation for what may have occurred. Then what the Court should do is hold a hearing and make findings. And, of course, that didn't happen here. But really, I think you can rule on this issue by just looking at Baptiste and considering whether the Court made any of the required willfulness, bad faith, serious misconduct findings, or looking at the five factors that the Court should have considered in the very short duration of the lay here. Excuse me, what are the lesser sanctions that you have in mind that the judge put in place? Yes, Your Honor. The lesser sanction that would have been appropriate here would have been to schedule the trial without Mr. Long's input. To schedule it? To schedule it. The district court could have said, well, you didn't appear, so I guess what you would have said about the trial date, I'm not going to take it into account. Remind me, was that the only purpose of the hearing, of the scheduled date that he missed, to set the trial date? Yes, Your Honor. That is the only purpose that appears in the record. What the order says is yes. And the Court could have set a trial date, and then if Mr. Long didn't appear for the trial, then perhaps at that point it would have been more appropriate to take more drastic action, but certainly not at the status conference point where the parties found themselves. So, Mr. Sutherland, you reserve two minutes for rebuttal. We'll hear from Mr. Fitch, who is also on Zoom. Good morning, Mr. Fitch. Good morning. May it please the Court, David Fitch, Underburton Kessler, on behalf of the appellees, I do want to take a moment to thank you for allowing me to appear remotely this morning. In response to— It's a nice day here in New York City, Mr. Fitch. I do appreciate that. I do love the city. Thank you. Just in response, briefly, I would agree with some of the questions earlier regarding the full picture of this litigation. This litigation is based on allegations of wrongdoing at the Steuben County Jail between the end of 2011 and the beginning of 2014. Mr. Long, when he brought this action in 2016, was appointed counsel, as the record indicates that counsel obtained employment that caused him to seek withdrawing. The court granted Mr. Long new counsel, two new counsel, in fact, and Mr. Long submitted a letter at some point, I believe it was the beginning of 2021, in which he indicated he was unhappy with his assigned counsel. Up until that point, our office had been working with assigned counsel to exchange document discovery. This included over 55 medical authorizations for Mr. Long's alleged ongoing treatment, etc. Once Mr. Long complained about his assigned counsel and the court allowed that counsel to withdraw, the case came to a bit of a standstill. I issued a letter to Mr. Long in June of 2021 asking him to prosecute the case. I would note for the record that the parties had agreed initially, when he had counsel, that due to the ongoing alleged treatment and care of Mr. Long, depositions would be delayed. I would just note for the record, there have been no depositions conducted in this matter. I would also note that... Where is the June 2021 letter? Judge, I'm not sure if this appears on the record. I believe there was a response from Mr. Long on July 14th of 2021, in which he responded indicating he wanted to proceed. I would note that after March of 2022, there was a court status conference at that time. There was no activity aside from a request from Mr. Long to appoint new counsel in the summer of 2022. At the end of 2022, Judge Wolford scheduled a status conference to set a trial date. My understanding of that was because of the lack of activity, that conference was scheduled. Here's the thing on 2021. As Mr. Sutherland pointed out, we had the pandemic. And then on top of that, it appears that Mr. Long was undergoing chemotherapy. And was that known to both you and the court? I don't believe so, Your Honor. No. So it's our position that Judge Wolford wanted to get a sense of what was going on here. I anticipate that if Mr. Long appeared on January 13th of 2023... There's a letter at page 226 of the appendix that says, Dear Judge, Vincent Long, I need an extension of time. I have no computer. I am going through chemo. And I have shingles from a low immune system from chemo cancer. And what was the date of that, Your Honor? I may have misunderstood you. That is September 2, 2021. I believe that would have been the first time that he would have indicated he had the illness. But I apologize. I thought you were referring to prior to that. So I anticipate that if both parties appeared on January 13th of 2023, the court would have been informed that discovery was not completed at that time. I'm sorry. Say that again. You dropped your voice. I didn't hear it. Sorry, Your Honor. I suspect and I submit that if Mr. Long appeared on January 13th of 2023, that he and I would have informed the court that there may have been continued document discovery if he was continuing to receive care and that depositions, no depositions, had been conducted at that point. So I do not anticipate that the district court would have scheduled a trial date from that conference. I believe it would have been more of a status conference. So that would not have been a sensible lesser sanction in your view. Your friend suggested that that could have been something that the district court did. But I think the broader complaint is that the district court did not consider as one of the LUCA sectors any lesser sanction. Certainly scheduling the mat for trial, as counsel indicates, would have been certainly burdensome on my clients to prepare without having a full understanding if plaintiff would show for trial. Your point, which I thought of when your friend mentioned it, was that that might have been a lesser sanction for him, but that would have sanctioned your client. I agree, Your Honor. That would have been very difficult. Furthermore, when a judge dismissed on the 41B rule text decision, it's her discretion. She didn't have to articulate or memorialize everything that she took into account. Mr. Long did not appear for the mandatory scheduling conference. Mr. Long was provided 30 days to respond in writing why the matter should not be dismissed. He failed to do that. And then, out of extra caution, once the judge received the submission from Mr. Long, which arrived in March, the letter was dated January 19th, she allowed him to be heard further by deeming that submission a motion to reopen, essentially. And at that point, my clients were directed to respond to that motion. And as indicated by Your Honor earlier, the court then issued a thorough decision on July 24th of 2023, in which she went through the various points as to why this matter should be dismissed and why this was not excusable neglect on behalf of Mr. Long. I fully concur with that decision. Again, I would note, as a whole, if you look at the length and duration of this litigation, we are 10 years past the alleged wrongdoing. We're 10 and a half years past the alleged wrongdoing. So on the issue of prejudice, just briefly, I would submit, my clients would be prejudiced at this stage of the game to have to find all material witnesses to present at trial. So counsel wants to shorten the period of delay. And certainly, I think the Baptiste case is distinguishable. Just first and foremost, the plaintiff in that matter had counsel and responded in two ways or two times to the order to show cause. And the court felt that with counsel, things would move along if, in fact, the case were to continue. That is not the case here. Again, based on the start, stop, start, go nature of the plaintiff in this case, years have gone by. And I do appreciate the fact that the pandemic did delay litigation across the board. But this case was filed in 2016, Your Honors. I understand that. But let's just say hypothetically that there were very good reasons for the delays and for the lack of activity in 2021 or most of 2021 and then 2022. Whether health reasons, the pandemic or otherwise. Then what we have is a very short delay in responding, followed by a response. And are you aware of a case where there's been such a short delay that leads to a dismissal? Judge, the cases that we found regarding that are included in our brief. We did not find anything regarding a month or two. Yeah. If the case were to be remanded and trial order, could the case go forward to trial now at this point or not? Or would you be so prejudiced without further discovery that you would argue that there couldn't be a trial in the present state of the case? That may, in fact, be the position of my clients if that were the case, Judge Walker. I'd also kind of reiterate the fact that. That may be the position of your client, maybe the lawyer's argument. On the other hand, does the argument have substance? I mean, that's I guess my question. You don't seem to be that concerned about a trial. That's not the case, Your Honor. At this point, I'm not sure what witnesses I would still have available to have appear to provide trial testimony. The case hasn't gotten anywhere close to trial to this point. So, again, there's still further, I think, document discovery because I believe Mr. Long would indicate that he had ongoing treatment through the pandemic. And depositions would have to be conducted. So I would anticipate the parties would strongly request that the district court allow further discovery. Again, 10 years after the alleged incident of wrongdoing. Mr. Sutherland, you've got two minutes for rebuttal. Thank you, Your Honor. The district court's dismissal order doesn't contain any of the reasoning that we've been discussing. But if we're looking at the entire duration of the period, the parties jointly requested extensions on multiple occasions. And the discovery here has largely been completed. Now, if the parties had appeared on January 13, 2023. Can you stop there a minute? You say it's largely been completed. The other side is not giving that same. We don't get an agreement from the other side on that. They say depositions are required and that they may have difficulty getting depositions because of the time lapse that's occurred. Yeah, I don't know if they want to depose their own people or if they want to depose Mr. Long, then that's a possibility. They can certainly depose Mr. Long if they want to do that or they don't have to. I mean, depositions are not a fundamental prerequisite for going to trial. I understand that. Mr. Southerland, would you be representing Mr. Long on remand if we were to go that way? No, Your Honor, I would not. So he would be asking for counsel for the purposes. He would be back to prosaic, presumably. Well, unknown. I guess in my experience, law firms, not mine, but other law firms are oftentimes eager to give their associates trial experience. So if the court set a trial date and asked for assistance, I have a feeling that someone would step up. But I can't promise that, Your Honor. What I can say is that a trial is the paradigm of due process. And so it's not prejudice to anyone to schedule a trial date, not prejudice to defendants. What the prejudice is here is a fundamental prejudice to Mr. Long, who got the case to this point and then it was dismissed on the eve of trial without any reasoning. And for that reason, we would ask this court to reverse the judgment and remand for trial. Are you appearing here on pro bono? Yes, Your Honor, I am. Well, on behalf of the Second Circuit, I thank you. Well, I do have one question. It wouldn't necessarily be a remand for trial. It would be a remand for the district court to explain her decision in detail and cover the five factors. Correct? It could be a remand in that sense, which is what this court did in Kaplan v. Hezbollah. It was just a remand to explain. Or this court could opt to give more guidance under the five factors as it did in Baptiste. Either one of those would be a reasonable outcome, Your Honor. All right. Thank you very much. We'll reserve the decision.